**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Lauren L. Lavoie, individually; Lauren L. Lavoie, as Guardian and Natural Parent of L.S., a Minor, | **2:22-cv-00628-GMN-MDC** |
| Plaintiff(s), | |
| vs. | **Report and Recommendation** |
| Hyundai Motor America, *et al*., | |
| Defendant(s). | |

Pending before the Court is the *Motion to Dismiss Plaintiffs' Claims as Spoliation Sanctions* ("Motion for Spoliation") (ECF No. 41) for the destruction of the vehicle involved in the crash giving rise to this action. Plaintiffs admit that spoliation occurred. Plaintiffs oppose the Motion for Spoliation as to the sanctions requested by defendants. The Court recommends granting the Motion for Spoliation (ECF No. 41) and dismissing the case as the appropriate sanction. The Court discusses its recommendation below.

**DISCUSSION**

**I.     FACTS**

**A.  Background**

This is a negligence/products liability suit arising from a single-vehicle accident. Defendants filed their Motion for Spoliation after uncovering that plaintiffs' prior counsel failed to preserve plaintiffs' vehicle after he and his selected expert inspected the vehicle.

On March 1, 2020, plaintiff Lauren L. Lavoie was involved in a single-vehicle crash. ECF No. 1-1, Ex. A, ¶ 9. Ms. Lavoie was pregnant at the time with her son, L.S. Plaintiff alleges that her 2008 Hyundai Elantra ("vehicle" or "car") unexpectedly stalled and subsequently the steering wheel locked, causing plaintiff's vehicle to depart the roadway, strike a gravel embankment, and rollover. ECF No. 1-

1 at ¶9. This event led to the premature birth of her son, L.S. who is also a plaintiff to this lawsuit.[1] ECF
No. 45 at 4:15-16. The vehicle was towed and stored at Sunrise Towing (ECF No. 45 at 4:23-24).  At
her family's suggestion, Ms. Lavoie retained Eldridge Suggs IV, Esq. ("Attorney Suggs"), a Georgia
lawyer who was a childhood friend of Ms. Lavoie's brother-in-law.  ECF No. 45 at 5:3-5; ECF No. 45 at
Ex. 1, ¶14.

**B.  The Spoliation of The Vehicle**

Plaintiffs admit that spoliation of the vehicle occurred.  ECF No. 45 at 12:5-6.  The chronology
relevant to the spoliation of plaintiff's vehicle is also undisputed.  *See i.e.,* ECF No. 45 at 8-9.  On
March 6, 2020, Sunrise Towing gave *Notice of Unclaimed Vehicle* via certified mail to Ms. Lavoie's
home address and publication. That March 6 notice advised of certain fees owed in connection with the
tow and storage of plaintiff's vehicle. ECF No. 41-13; ECF No. 45 at 8. Notably, the March 6 notice
further recommended that the vehicle be recovered "as soon as possible" and warned that the vehicle
would be sold as early as April 22, 2020, unless arrangements were made with Sunrise Towing. ECF
No. 41-13. Thereafter, Ms. Lavoie informed Attorney Suggs of the unpaid fees and her desire to access
the vehicle to retrieve her belongings.   ECF No. 45 at Ex. 1, ¶¶22-23.  Attorney Suggs then facilitated
payment to Sunrise Towing and Ms. Lavoie was able to access the vehicle and retrieve her belongings.
*Id.*

On March 31, 2020, Sunrise Towing also gave Ms. Lavoie another written notice regarding fees
owed to Sunrise Towing and again warning that vehicle would be sold as early as April 22, 2020.  ECF
No. 41 at 7:4-12. Around that time, Sunrise Towing also called and spoke with Ms. Lavoie regarding her
vehicle and the outstanding fees. ECF No. 45 at Ex. 1, ¶25.  Ms. Lavoie then contacted Attorney Suggs
about the matter who advised Ms. Lavoie that he was handling the matter with Sunrise Towing.  *Id.*

On April 7, 2020, Sunrise Towing gave Ms. Lavoie a third written notice regarding owed fees
and again warned that if the vehicle remained unclaimed, it would be sold by April 22, 2020. ECF No.

---

[1]  Plaintiff Lauren L. Lavoie brings this suit individually and as Guardian and Natural Parent of L.S., a minor.

41 at 7:4-12.  During this time, Attorney Suggs was in contact with Sunrise Towing and arranged for him and an expert he hired to inspect the vehicle. ECF No. 45 at Ex. 1, ¶28. That inspection arranged by Attorney Suggs with Sunrise Towing took place on April 9, 2020, just two days after Sunrise Towing's third notice of April 7 warning the vehicle would be disposed. ECF No. 45 at 8. While Attorney Suggs arranged his inspection of the vehicle, he did not contact defendants about whether they wished to inspect the vehicle.

On April 14, 2020, Sunrise Towing gave a fourth written notice again warning that the vehicle would be sold by April 22, 2020, unless other arrangements were made.  ECF No. 41 at 7:4-12. Again, Attorney Suggs was aware of the situation and the looming disposition of the vehicle (ECF No. 45 at Ex. 1, ¶25).  There is no evidence, however, that Attorney Suggs responded to this fourth notice or otherwise took any action to arrange with Sunrise Towing to take possession of the vehicle or otherwise make any efforts to preserve the vehicle (even for a reasonable time to allow defendants the opportunity of an inspection).[2]  Further, Attorney Suggs once again failed to contact defendants about whether they wished to inspect the vehicle before the April 22, 2020, deadline. Instead, Attorney Suggs allowed the vehicle to be disposed of.  On April 30, 2020, Sunrise Towing sold the vehicle at an auction and the vehicle was thereafter scrapped, apparently for parts.  ECF No. 41 at 7:4-12.

    **C.**    **Plaintiffs' Claims Are Based On The Unilateral Inspection Of The Vehicle By Her Expert and Attorney Suggs**

On June 18, 2020, following Attorney Suggs and his expert's unilateral inspection of the vehicle, the expert provided Attorney Suggs with reports of the expert's opinions regarding the cause of the accident.  ECF Nos. 41-3 and 41-7.  Based on his April 9, 2020, inspection of the vehicle, the expert opined that the accident was caused by a combination manufacturing faults with the vehicles anti-lock brake system module (ABS), the steering mechanism, and an engine fire.  Specifically, plaintiffs' expert

---

[2]  Defendants subpoenaed Attorney Suggs' file and claim that Attorney Suggs evaded service for month. More importantly, after he was served, Attorney Suggs represented that he had destroyed his files regarding Ms. Lavoie.  *See* ECF No. 45 at 8:3-5.

opines that [1] a short-circuiting occurred with the vehicle's ABS, [2] likely started an engine fire that [3] caused Plaintiff Lavoie's engine to stall, and while the vehicle stalled [4] any movement of the steering wheel would cause the wheel to lock.  ECF No. 41-3 at ¶¶1-2.

By demand letter dated April 1, 2021, Attorney Suggs made his first contact with defendants. Attorney Suggs claims that the plaintiff's March 1, 2020, accident was caused by the vehicle's defects identified by his expert:  "The short-circuit issues with the ABS module likely started an engine fire that caused Ms. Lavoie's engine to stall, which would lock the steering wheel with any movement, preventing Ms. Lavoie's ability to steer the vehicle."  ECF No. 41-8 at 6.  Attorney Suggs' demand also included a draft of a complaint against defendants, which alleges identical faults as the cause of the accident.  ECF No. 41-8 at 9.  Defendants rejected the demand after Attorney Suggs was unable to produce the vehicle for defendants' inspection and this action ensued.

While plaintiffs' Complaint in this action (ECF No. 1-1) contains general allegations of negligence and does not expressly incorporate her expert's opinions as the cause of her accident, plaintiffs' claims cannot be maintained without her expert's opinions about the causes of the accident. Those are the only causes supporting plaintiffs' claims that plaintiffs could distinctly articulate in their Opposition (ECF No. 45 at 2-7) and during the May 17, 2024, hearing on defendants' Motion for Spoliation.

Defendants' Motion for Spoliation requests sanctions in the form of dismissal or, in the alternative, summary judgment. ECF No. 41.  Plaintiffs do not dispute spoliation but blame their former counsel, Attorney Suggs, for failure to preserve the vehicle and argue that dismissal or summary judgment sanctions are too harsh.

## II.    LEGAL STANDARD

Courts have inherent authority to sanction parties for spoliation of evidence. *Leon v. IDX Systems Corp*., 464 F.3d 951, 955 (9th Cir.2006).  The duty to preserve relevant evidence is one of the most basic, well-established, and widely accepted litigation tenets.  *See Aiello v. Kroger Co.,* No. 2:08-CV-

01729-HDM-RJJ, 2010 WL 3522259, at *2 (D. Nev. Sept. 1, 2010).  "Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citing *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680 (Ct. App. 1998)). "To be actionable, the spoliation of evidence must damage the right of a party to bring an action." *Ingham v. United States,* 167 F.3d 1240, 1246 (9th Cir. 1999). To establish spoliation, the party seeking sanctions must establish that: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." *Golia-Huffman v. Food,* 2023 U.S. Dist. LEXIS 179872, at *5 (D. Nev. Aug. 8, 2023). The threshold question is "whether or not evidence as actually altered or destroyed." *Id.* at *5-6.

Once it has been determined that spoliation has occurred, the district court may sanction the spoliating party in three ways. "First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence." *In re Napster, Inc. v. Hummer,* 462 F.Supp. 2d, 1060, 1067 (N.D. Cal. 2006) (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993). "Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence." *Id.* (internal citations omitted). "Finally, a court may dismiss the claim of the party responsible for destroying the evidence." *Id.* (internal citations omitted). "[A] party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d at 1066–67.

//

//

//

//

1    **III.    ANALYSIS**

2        **A.    Relevant Evidence Was Lost and Destroyed**

3        The first key element of spoliation is easily established.  *Golia-Huffman v. Food*, 2023 U.S. Dist.

4    LEXIS 179872, at *5. There is no dispute that the plaintiff's vehicle was sold and then destroyed for

5    parts.

6        **B.    Plaintiffs Had A Duty To Preserve**

7        Again, the duty to preserve is one of the most basic rules in litigation.  *Aiello,* 2010 WL

8    3522259, at *2.  And the duty to preserve the vehicle here was plainly obvious and not disputed by the

9    plaintiff.  "[A party] engage[s] in spoliation of documents as a matter of law only if they had some

10    notice that the documents were potentially relevant to the litigation before they were destroyed." *United*

11    *States v. Kitsap Physicians Serv.*, 315 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United States*,

12    938 F.2d 158, 161 (9th Cir. 1991)) (internal quotations omitted). Once a party is on notice of a potential

13    claim, it is under a duty to preserve evidence which it knows, or reasonably should know, is relevant to

14    the claim or potential litigation. *Stedeford v. Wal-Mart Stores, Inc.*, 2016 U.S. Dist. LEXIS 83019, at

15    *15 (D. Nev. June 24, 2016) (citing *In re Napster, Inc.*, 462 F.Supp. 2d at 1067). Here, there is no doubt

16    that plaintiffs were on notice that the vehicle would be relevant to litigation, especially considering the

17    steps taken after the accident. The crash occurred on March 1, 2020, and was towed to Sunrise Towing.

18    ECF No. 45 at 8. At or around mid-March 2020, plaintiffs retained Attorney Suggs.  *Id.* At this point,

19    there would have been some notice that the vehicle would be relevant to any potential litigation. At or

20    around late March and early April 2020, plaintiff received a call from Sunrise Towing regarding

21    outstanding fees. *Id.* Plaintiff informed Attorney Suggs, who "advised he is handling." *Id.* On April 9,

22    2020, plaintiffs had an expert from the Institute of Risk and Safety Analysis ("IRSA") conduct an

23    inspection of the vehicle. *Id.* at 6; *Id.* at 8. At this point, there was no doubt that the vehicle was not only

24    relevant but material to any potential litigation. Plaintiffs' counsel, Attorney Suggs, however, denied

25    defendants the same opportunity he gave plaintiffs to inspect the vehicle.  Attorneys Suggs did not

advise defendants of potential claim or the of the circumstances regarding the vehicle, including that the vehicle would be sold and likely unrecoverable. There is no question that plaintiffs, through their Attorney Suggs, breached their duty to preserve evidence.

### C.    Attorney Suggs' Spoliation Of The Vehicle Was Willful

Defendants argue that the plaintiffs acted "willfully" in failing to preserve the vehicle because plaintiffs knew or should have known that litigation was likely, and that the vehicle would be relevant. ECF No. 41 at 12. Plaintiffs argue that they lacked the requisite intent, willfulness, or bad faith to warrant dispositive sanctions. ECF No. 45 at 12.  Plaintiffs effectively blame Attorney Suggs and attempt to distance themselves from the consequences of his malfeasance.  While the Court sympathizes with plaintiffs' situation, it would be unfair and inequitable to impose any consequences on defendants, which took no action and had no control over the circumstances. Indeed, the Supreme Court recognizes that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 396 (1993).

The Court turns to plaintiffs' argument that they lacked the requisite state of mind to warrant dismissal. Plaintiffs argue that they lacked the requisite bad faith or willfulness because the spoliation is attributable to plaintiffs' former counsel, Attorney Suggs, whose actions were "at worst, negligent." ECF No. 45 at 14:8-9. As stated above, the Court disagrees that plaintiffs can somehow be absolved of spoliation sanctions because the spoliation was done by Attorney Suggs.  Attorney Suggs was plaintiffs' chosen attorney and agent, and they are accountable for his actions. *Reeves v. Colvin*, 2014 U.S. Dist. LEXIS 142699, at *26 (D. Nev. Aug. 4, 2014); *Pioneer Inv. Servs.*, 507 U.S. at 396. The Supreme Court found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Pioneer Inv. Servs, 507* U.S. at 396 (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 633 (1962)). The Supreme Court explained:

> "Petitioner voluntarily chose his attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with

> our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney."

*Link*, 370 U.S. at 633-634.

An attorney's actions are attributable to a client because of the principles of agency. *See Gypsum Res., LLC v. Clark Cnty.*, 2023 U.S. Dist. LEXIS 69880, at *69 (D. Nev. April 21, 2023) (citing *Rouse v. Lee*, 339 F.3d 238, 249 (4th Cir. 2003) ("Former counsel's errors are attributable to to…[plaintiff] not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under the standard principles of agency."); citing *Goodman v. Praxair Servs., Inc*., 632 F.Supp.2d 494, 522 n.16 (D. Md. 2009) ("A party may be held responsible for the spoliation of relevant evidence done by its agents.")). Ineffective counsel seems to be one instance where attorney's actions are not attributed to the client; however, this only applies to cases where there is a constitutional right to effective counsel (i.e., under the Sixth Amendment). *See e.g., Coleman v. Thompson,* 501 U.S. 722, 753-54, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991).

The Court finds that Attorney Suggs willfully failed to preserve the vehicle. "A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the [evidence was] potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001) (9th Cir. 2002)). Attorney Suggs had notice that the vehicle was relevant. Plaintiffs specifically hired Attorney Suggs to represent them in connection with the accident involving the vehicle. As discussed above, Plaintiff Lavoie advised Attorney Suggs of the vehicle's location at Sunrise Towing, the fees owing to Sunrise Towing, and the towing company's intention to dispose of the vehicle. In response, Attorney Suggs advised plaintiff Lavoie that he would handle the situation. ECF No. 45 at Ex. 1, ¶25. Thereafter, Attorney Suggs interfaced with Sunrise Towing about the vehicle. He arranged with Sunrise Towing for plaintiff Lavoie to retrieve personal items from the vehicle.

There is no question Attorney Suggs understood the importance of preserving the vehicle for inspection. Thus, Attorney Suggs also arranged for himself and his hired expert to inspect the vehicle in connection with plaintiffs' claim. ECF No. 45 at Ex. 1, ¶28; ECF Nos. 41-3 and 41-7. At no point did Attorney Suggs give defendant an equal opportunity or take any efforts to preserve the vehicle for defendants' inspection. As defendants aptly point out "Plaintiffs preserved critical evidence for review by plaintiff's own experts, yet plaintiffs failed to take proactive steps to afford the same opportunity to Hyundai Defendants, their counsel, or their experts." ECF No. 541 at 15:7-9. At a minimum, Attorney Suggs could have given defendants notice of plaintiffs' accident, the location of the vehicle at Sunrise Towing, and warning that towing company intended to dispose of the vehicle at the end of April 2020. Again, the preservation of relevant evidence is a basic, well known litigation rule. *Aiello,* 2010 WL 3522259, at *2.  The Georgia State Bar records indicate that Attorney Suggs is an experienced litigator (admitted in 1997) who is a member of E-discovery section of the Georgia State Bar.

To the extent that plaintiffs argue that Sunrise Towing sold the vehicle without plaintiffs' knowledge (ECF No. 45 at 15), the evidence demonstrates otherwise.  As discussed above, plaintiff Lavoie and Attorney Suggs were in contact with Sunrise Towing and had multiple notices that Sunrise Towing intended to dispose of the vehicle.  Moreover, Sunrise Towing's disposition of the vehicle is imputed on the plaintiffs. *See Gypsum Resources, LLC v. Clark County*, 2022 WL 16951250, at *5 (D. Nev. Nov. 15, 2022) ("A plaintiff, particularly one who was represented by counsel prior to the spoliation, is not relieved of this responsibility merely because the plaintiff did not itself act in bad faith and a third party to whom Plaintiff entrusted the evidence was the one who discarded or lost it.") (citing *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008); *Austin v. Nissan Motor Corp. U.S.A.*, 1996 WL 117472, at *2 (E.D. Pa. Mar.12, 1996) (holding plaintiffs at fault for permitting loss of allegedly defective seat back, even though it was discarded by a garage repairing the vehicle rather than by the plaintiffs themselves, "[i]n light of the fact that plaintiffs retained counsel before repairs were begun and that they were fully aware that any potential lawsuit

against Nissan would revolve around alleged defects in the driver's side seat"). Sunrise Towing's actions in disposing of the vehicle (after multiple warnings to plaintiffs and their counsel) in its ordinary course of business does not absolve plaintiffs of spoliation sanctions.

### D.    The Vehicle Is Relevant and Material To Plaintiffs' Claims

The parties do not dispute that the vehicle was relevant to the litigation. Relevance is the third element of spoliation, and it requires "a two-pronged finding of relevance and prejudice." *Reinsdorf v. Sketchers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013) (internal citations omitted). "The first prong – relevance – requires that the destroyed evidence would have been useful for a 'reasonable trier of fact' to decide the underlying claim." *Odeh-Lara v. Synchrony Bank*, 2021 WL 8086854, at *2 (C.D. Cal. Oct. 12, 2021) (internal citations omitted). The second prong – prejudice- looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case. *Id.* (citing *Leon*, 464 F.3d at 959). The Court agrees with the parties that the vehicle was relevant to the litigation. Plaintiffs' claims are based on allegations that the "steering wheel locked" and caused "the vehicle to veer from the roadway." ECF No. 45 at 4. Plaintiffs suit is based in part on a theory of defective design. ECF No. 1-1, Ex. A. In a products liability suit alleging defective design, it seems obvious that the alleged product would be relevant to the litigation.

### E.    Defendants Have Been Greatly Prejudiced

The main disagreement between parties here seems to be the extent of prejudice suffered by defendants. Here, defendants argue that the extent of prejudice they suffered warrants dismissal of the case, or in the alternative, summary judgment. ECF No. 41. Plaintiffs argue to the contrary, stating that while there is prejudice, it is not so great as to warrant dismissal.

The Court agrees that defendants were greatly prejudiced by the spoliation. As noted, prejudice looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case. *See Leon*, 464 F.3d at 959; *see also Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011) ("The party asserting it has been

prejudiced by the spoliation must show that the spoliation materially affects its substantial rights and is prejudicial to the presentation of the case.") (internal citations omitted). "To satisfy this burden, the party asserting prejudice must only come forward with plausible, concrete suggestions" about what the spoliated evidence "might have been." *Brown v. Albertsons, LLC*, 2017 WL 1957571, at *9 (D. Nev. May 11, 2017) (citing *Micron Technology, Inc.*, 645 F.3d at 1328). Defendants have met their burden. Defendants stated that if they would have inspected the vehicle:

1. They might have been able to refute that a fire had even occurred or that it had preceded the crash.
2. They could have shown whether the alleged ABS or EPS defects had even existed or that the defects had caused the accident.
3. They could have shown that the ABS or EPS modules were functioning correctly and not causally related to the crash.
4. They could have shown that the components were not original Hyundai components.

ECF No. 41 at 14-15.

As defendants point out, they "cannot know what they cannot know." ECF No. 41 at 15:21. Defendants are now left in a position where they must rely on speculation and incomplete evidence, which warrants a finding of prejudice. *See Leon*, 464 F.3d at 959 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995)) (finding prejudice where a party's refusal to provide certain documents forced the other to rely on incomplete and spotty evidence at trial).

While the expert's June 18, 2020, reports included photographs of the vehicle (ECF Nos. 41-7 and 41-21), the photographs were only of the vehicle's exterior and occupant area. The report did not contain any photographs of the vehicle's components at issue.  In fact, neither Attorney Suggs, plaintiffs' expert, nor plaintiff produce to defendants any photographs of the vehicle's [1] breaks or ABS system; [2] engine or any other thermal event in the engine compartment or anywhere else in the

vehicle; [3] the steering mechanism[3]; or [4] the electronic power steering module (EPS). *See* ECF No. 41 at 3:1-10; ECF Nos. 41-7 and 41-21.

## IV.    Dismissal as an Appropriate Sanction

As noted above, "a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper." *Anheuser-Busch, Inc*, 69 F.3d at 348 (internal citations omitted). The Court determined that Attorney Suggs's actions were willful and are imputed on plaintiff. However, before the Court can impose the "harsh sanction of dismissal," it must consider the following factors.

> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its dockets;
> (3) the risk of prejudice to the party seeking sanctions;
> (4) the public policy favoring disposition of cases on their merits; and
> (5) the availability of less drastic sanctions.

*Leon*, 464 F.3d at 959 (citing *Anheuser-Bursch*, 69 F.3d at 348).

The Court finds that the first *Leon* factor, the public's interest in expeditious resolution of litigation, favors dismissal. Dismissal of the action would result in resolution of litigation without further delay. The second *Leon* factor, the Court's need to manage its docket, also favors dismissal. This case has been pending for two years, and resolution of this action would be beneficial. The third *Leon* factor also favors dismissal. The Court has already discussed the prejudice defendants would face should they be forced to rely on incomplete and spotty evidence.

The Court looks to the fifth *Leon* factor and finds that it also favors dismissal. The Court also considered less drastic sanctions but finds that such sanctions are not useful. First, adverse jury instructions would not eliminate the prejudice faced by defendants when they would be "helpless to rebut any material that plaintiff might use." *Leon*, 464 F.3d at 961. It would be fundamentally unfair to allow plaintiffs the advantage of presenting evidence from a vehicle only they had the chance to examine. This is because defendants have "been denied the primary and best means of defending against

---

[3]  Photos of the vehicle's occupant area only included photos of the general steering wheel are with the airbag deployed.  ECF No. 45-21

[plaintiffs'] claims." *Azad v. Goodyear Tir & Rubber Co.*, 2013 WL 593913, at *5 (D. Nev. Feb. 14, 2013). Second, the exclusion of evidence would be futile. *Id.* Barring plaintiffs from presenting their expert witness would result in plaintiffs' complaint being dismissed or adjudicated  on summary judgment for lack of causation or evidence. *Id.* Although plaintiffs argue that in design defect cases, a party's inability to inspect the product does not preclude a plaintiff from bringing a claim, the Court is not convinced. ECF No. 45 at 15, 10-12 (citing *Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 28 (1st Cir. 1998)). Plaintiffs' claims rest on the specific findings of her expert regarding the alleged failure of the vehicle's multiple components. Defendants do not have an opportunity to inspect those components[4] and challenge plaintiffs' claims and causation.  In addition to spoliation, plaintiffs took no pictures of the alleged defective components. ECF No. 41at 6. And although there have been recalls due to the alleged defect, this situation is unlike *Collazo-Santiago*, where plaintiff's injuries were consistent with the known defect. The defendants have asserted that the defect manifested in "less than one percent of all vehicles subject to the service campaigns." ECF No. 41 at 14. Further, although plaintiffs' expert witness opines as to the cause of the accident, the opinion is based on plaintiff Lavoie's statements, no photographic proof of the alleged fire was ever taken. ECF No. 41-3. There is no proof, other than plaintiff Lavoie's own statements that there even was a fire in the engine. In these circumstances, where circumstantial evidence is minimal, the Court finds that plaintiff will not be able to meet their burden of proof and persuasion. *See Rivera v. Phillip*, 209 P.3d 271, 275 (Nev. 2009) ("In strict product liability cases, the plaintiff carries both the burden of production and the burden of persuasion").

The fourth *Leon* factor, public policy favoring disposition of cases on their merits, weighs against dismissal. However, the Ninth Circuit has held that "the public policy favoring disposition of cases on their merits," "standing alone," "is not sufficient to outweigh the other four factors." *See Leon*,

---

[4]  Indeed, defendants pointed out in their briefs and during the hearing, plaintiffs have no evidence that the vehicle's components which allegedly failed and caused the accident were actually Hyundai components instead of some other after-market brands.

464 F.3d at 961 (citing *Malone v. U.S. Postal Service*, 833 F.2d 128, 133 n.2 (9th Cir. 1987)). Therefore, the Court finds that dismissal is an appropriate sanction.

ACCORDINGLY,

**IT IS RECOMMENDED that** the *Motion to Dismiss as a Spoliation Sanction* (ECF No. 41) be GRANTED and that this case be dismissed.

DATED this 28th day of May 2024.

IT IS SO RECOMMENDED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge