**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LAUREN L. LAVOIE, *et al.*,           )
                                       )
             Plaintiffs,               )    Case No.: 2:22-cv-00628-GMN-MDC
      vs.                              )
                                       )    **ORDER REJECTING R&R AND**
HYUNDAI MOTOR AMERICA, *et al.*,       )    **DENYING MOTION TO DISMISS**
                                       )
             Defendants.               )
                                       )

Pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Maximiliano D. Couvillier III, (ECF No. 54), which recommends the Court grant Defendants' Motion to Dismiss as a Spoliation Sanction, (ECF No. 41).[1] Plaintiffs filed an Objection, (ECF No. 58), to which Defendants filed a Response, (ECF No. 60). For the reasons discussed below, the Court SUSTAINS the Objection, REJECTS the R&R, and DENIES the Motion to Dismiss.

**I.    BACKGROUND**

This case arises out of a single-car accident allegedly caused by a defect in Plaintiff Lauren Lavoie's vehicle, a Hyundai Elantra. (*See generally* Compl., Ex. A to Pet. Removal, ECF No. 1-1). The vehicle unexpectedly stalled and the steering wheel locked, causing the vehicle to veer off the road, strike a gravel embankment, and rollover. (*Id.* ¶ 9). Plaintiff was pregnant at the time, and the accident led to the premature birth of her son, L.S., who is also a plaintiff in this case. (*Id.*); (Resp. to Mot. Dismiss 4:15–16, ECF No. 45). The R&R recommends dismissing Plaintiffs' claims due to spoliation of the vehicle. (R&R 1:8–13, ECF No. 54).

As laid out in the R&R, after the accident, the vehicle was towed and stored at Sunrise

---

[1] Defendants' Motion alternatively requests summary judgment.

1  Towing. (*Id.* 2:2) (citing ECF No. 45 at 4:23–24).  Ms. Lavoie then hired attorney Eldridge
2  Suggs IV, Esq., a family friend. (*Id.* 2:3–5).  Sunrise Towing sent a "Notice of Unclaimed
3  Vehicle" to Ms. Lavoie via certified mail, which advised her of certain fees owed. (*Id.* 2:8–14).
4  The Notice states, "If satisfactory arrangements are not made within 15 days from the date of
5  this letter, this vehicle and its contents will be advertised for sale, and sold by auction at the
6  hour of 10:00 a.m. on April 22, 2020 or later. . . ." (Notice, Ex. 11 to Mot. Dismiss, ECF No.
7  41-13).  The parties dispute whether Ms. Lavoie actually received this and subsequent written
8  notices, but Ms. Lavoie admits that she was aware of the unpaid fees, informed Attorney Suggs
9  of the unpaid fees, and further expressed her desire to access the vehicle to retrieve her
10 belongings to Attorney Suggs[2]. (*See* R&R 2:14–15); (Obj. 2:6–8, ECF No. 58).  After Ms.
11 Lavoie was able to retrieve her belongings, Sunrise Towing sent Ms. Lavoie another written
12 notice regarding fees owed and again warned her that the vehicle would be sold if arrangements
13 were not made. (*Id.* 2:15–21).  Around this time, Sunrise Towing called Ms. Lavoie regarding
14 outstanding fees for her vehicle.[3] (Lavoie Decl. ¶ 25, Ex. 1 to Resp. to Mot. Dismiss, ECF No.
15 45-1).  When Ms. Lavoie informed Attorney Suggs, he advised her that he was handling the
16 matter with Sunrise Towing. (R&R 2:21–22).

17     Meanwhile, Attorney Suggs arranged for an expert to inspect the vehicle at Sunrise
18 Towing. (*Id.* 3:1–4).  He did not contact Defendants about whether they wished to inspect the
19 vehicle. (*Id.* 3:5–6).  Then, after a total of four written notices warning that the vehicle would
20 be sold by April 22, 2020, Sunrise Towing sold the vehicle at an auction after which the vehicle
21 was scrapped for parts. (*Id.* 3:7–16).  Attorney Suggs was aware of the notices and looming

---

[2] Plaintiffs argue that they did not have "actual notice that the vehicle would be auctioned by the tow yard, but only that they were aware of outstanding tow and storage fees owed." (Obj. 2:6–8, ECF No. 58).  Nonetheless, Plaintiffs admit that former counsel Attorney Suggs "should have been aware of the duty to take affirmative steps to ensure the vehicle's preservation." (*Id.* 2:8–10).

[3] Ms. Lavoie again maintains that she only had notice of the unpaid fees, and not that the vehicle would be sold. (Obj. 2:6–8, ECF No. 58).

1  disposition of the vehicle but did not take any action to preserve the vehicle, even for a
2  reasonable time to allow Defendants the opportunity to conduct their own expert inspection.
3  (*Id.*).  Attorney Suggs did not contact Defendants until nearly a year after the vehicle was
4  disposed of when he sent a demand letter asserting that the accident was caused by the
5  vehicle's defects identified by his expert. (*Id.* 4:4–6).  Defendants moved for spoliation
6  sanctions, and the Magistrate Judge recommends dismissal as a spoliation sanction.

7  **II.    LEGAL STANDARD**

8  A party may file specific written objections to the findings and recommendations of a
9  United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B);
10 D. Nev. R. IB 3-2.  Upon the filing of such objections, the Court must make a *de novo*
11 determination of those portions to which objections are made if the Magistrate Judge's findings
12 and recommendations concern matters that may not be finally determined by a magistrate
13 judge. D. Nev. L. R. IB 3-2(b).  The Court may accept, reject, or modify, in whole or in part,
14 the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev.
15 L.R. IB 3-2(b).

16 Courts have inherent authority to sanction parties for spoliation of evidence. *Leon v. IDX*
17 *Systems Corp.*, 464 F.3d 951, 955 (9th Cir. 2006).  The duty to preserve relevant evidence is
18 one of the most basic, well-established, and widely accepted litigation tenets. *See Aiello v.*
19 *Kroger Co.,* No. 2:08-cv-01729-HDM-RJJ, 2010 WL 3522259, at *2 (D. Nev. Sept. 1, 2010).
20 "Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to
21 preserve property for another's use as evidence, in pending or future litigation.'" *Kearney v.*
22 *Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citing *Hernandez v. Garcetti*, 68
23 Cal. App. 4th 675, 680 (Ct. App. 1998)).

24 Once it has been determined that spoliation has occurred, the district court may sanction
25 the spoliating party by giving an adverse inference jury instruction, excluding witness

testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence, or dismiss the claim of the party responsible for destroying the evidence. *In re Napster, Inc. v. Hummer*, 462 F.Supp. 2d 1060, 1066 (N.D. Cal. 2006). Before imposing the "harsh sanction" of dismissal, however, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon*, 464 F.3d at 958.

### III.   DISCUSSION

The Magistrate Judge recommends dismissal as a spoliation sanction because relevant evidence was lost and destroyed when Ms. Lavoie's vehicle was sold and then destroyed for parts, that Plaintiffs had a duty to preserve evidence, that Attorney Suggs's spoliation of the vehicle was willful, and that Defendants have been greatly prejudiced. (*See generally* R&R).

There is no dispute that the vehicle was spoliated. (Obj. 8:17). Plaintiffs nonetheless argue that the Court should reject the Magistrate Judge's recommendation because they did not have actual notice that the vehicle would be auctioned by the tow yard, there was no willful and bad faith conduct warranting the extreme sanction of dismissal, Defendants are not greatly prejudiced by the spoliation, and lesser sanctions are available and appropriate. (*See generally* Obj.). The Court finds that the risk of prejudice faced by Defendants and the availability of less drastic sanctions do not warrant the harsh sanction of dismissal at this stage, and dismissal would be premature.[4]

---

[4] The Court does not address the arguments concerning notice and bad faith conduct because dismissal is inappropriate based on the availability of lesser sanctions and the potentially mitigated risk of prejudice to Defendants. The extent to which Plaintiffs were on notice that the vehicle was to be disposed of and whether the spoliation amounted to willful and bad faith conduct is relevant to determining the confines of the lesser sanctions the Court should impose. The Court will consider these arguments when Defendants seek to suppress evidence or obtain an adverse jury instruction.

At the outset, the Court notes that the parties stipulated to bifurcate discovery, limiting the first phase of discovery to the spoliation of the vehicle. (*See* Order Extending Discovery Deadline, ECF No. 25). That is, the parties have not had an opportunity to discover other evidence beyond the spoliated vehicle. For example, as Plaintiffs identify, Ms. Lavoie had not been deposed or cross-examined regarding the series of events leading up to the crash. (Obj. 7:13–14). Once deposed, her testimony could be relied upon "in conjunction with the traffic accident report, photographs, service history, CarFax Report, evidence of Hyundai's internal design, recalls, and testing documents by the parties' expert witnesses to ascertain if the subject crash was due to a known design defect with the model of [Ms. Lavoie's] vehicle." (*Id.* 15:1–18:26). The availability of other evidence—or at least the potential for other evidence to be revealed through discovery—lessens the prejudice Defendants face from the spoliation of the vehicle.

Prejudice to Defendants is further lessened because "the design itself can be assessed by alternative means other than the subject product itself." (*Id.* 9:6–7). Namely, Plaintiffs suggest that their "design defect claim can be supported and refuted by evidence in Hyundai's possession, including but not limited to, design specifications, testing, and recall notices for the subject vehicle model and its component parts." (*Id.*11:14–16). Courts in other jurisdictions have found no prejudice when the "design itself, and not the alleged defect in the original product, would be the focus of the case." (*See id.* 9:2–11:11) (collecting cases) (quoting *Green v. Ford Motor Co.*, No. 1:08-cv-0163-LJM-TAB, 2008 WL 5070489, at *3 (S.D. Ind. Nov. 25, 2008)). Because discovery relating to the design specifications, testing, and recall notices has not occurred, the Court cannot determine whether Plaintiffs' design defect claim can be supported by evidence other than the spoliated vehicle. Similarly, the Court cannot determine the extent of Defendants' prejudice because Defendants may have other evidence to defend against Plaintiffs' claims. Thus, dismissal is premature at this time.

The Court acknowledges that Defendants are undoubtedly prejudiced by the spoliation of the vehicle. If they could have inspected the vehicle, Defendants might have been able to refute that a fire had occurred or that it had preceded the crash; they could have shown whether the alleged defects had even existed or that the defects had caused the accident; they could have shown that certain modules were functioning correctly and not causally related to the crash; and they could have shown that the components were not original Hyundai components. (R&R 11:5–12). But the Court is not convinced that Defendants will not be able to defend against Plaintiffs' claims with other evidence. Indeed, discovery has not even begun in earnest; the parties—and the Court—cannot know what has yet to be discovered.

Moreover, lesser sanctions may be available and appropriate. Plaintiffs suggest that the Court could, instead of dismissing the case, merely exclude testimony of parties who had a chance to view the vehicle before spoliation or provide adverse jury instructions. (Obj. 11:24–13:13). The Magistrate Judge concluded that "[b]arring plaintiffs from presenting their expert witness would result in plaintiffs' complaint being dismissed or adjudicated on summary judgment for lack of causation or evidence." (R&R 13:2–4). But as discussed above, other evidence may come to light in the next stage of discovery. If, after discovery, Plaintiffs do not have any evidence other than the testimony of their expert witness, which should be suppressed due to the spoliation of the vehicle, then Defendants can move for summary judgment.[5]

The Court is also not convinced that "adverse jury instructions would not eliminate the prejudice faced by [D]efendants." (*Id.* 12:19–20). At this stage, the Court finds that evidence obtained by Plaintiffs during their inspection of the vehicle should be suppressed, and an adverse inference instruction is warranted. Because Defendants did not request these lesser sanctions, the record and arguments are not adequately developed for the Court to craft the

---

[5] In their present Motion, Defendants moved for summary judgment in the alternative. Summary judgment, like dismissal, is premature at this stage.

parameters of these lesser sanctions. When appropriate, the parties should request—through stipulation or motion practice—the specific sanctions warranted in this case. At that time, the Court will consider the extent to which Plaintiffs were on notice that Sunrise Towing was going to dispose of the vehicle and whether the spoliation of the vehicle amounted to willful and bad faith conduct.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 54), is **REJECTED** and the Objection, (ECF No. 58), is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Plaintiffs' Claims as Spoliation Sanction, (ECF No. 41), is **DENIED.**

Dated this __9__ day of July, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court